The next case on for argument is United States v. McGee's. Let's wait till the room clears a little bit. May I please the court? My name is J.F. Seovich, and I'm here on behalf of the appellant John McGee's. This appeal pertains to Mr. McGee's conditions of supervised release, specifically two conditions that are in question, his participation in sex offender treatment and the requirement that he submit to computerized voice stress analysis. We also raise concern with the district court's determination that it could not establish different conditions of supervision for every defendant. And we're requesting that you vacate the judgment and remand the case to the district court for reconsideration of these conditions. I'd like to first clarify one thing that we're not doing. We are not challenging the requirement that he participate in sex offender treatment. Mr. McGee's currently is going through treatment. He's participating in it, and we are not saying that he shouldn't be. Our concern deals with, in pertinent part, the requirement that the probation officer will supervise the details of the defendant's participation in the program, including the selection of the provider and schedule. Our concern is what is not enumerated within the details that are being delegated to the probation officer. I'm not quite understanding that. I mean, I thought we said in Peterson that you can leave, I mean, I think this is a quote, leave a variety of details, including the selection of a provider and schedule to the probation officer. So you want the details specified? We're trying to find out some of the details, because there are questions that come up as to what the probation officer can do, as to whether or not they are details or whether they are actually intruding into the treatment program itself. Questions that we have. For example? For example, can the probation officer get full access to the client's file? Can the probation officer sit in on treatment sessions? Can the probation officer read material that our clients have to prepare for treatment? And if you'll give me a little leeway, I can give you some examples to show you how intrusive that this can be, and these have actually pertained to my client in this case. Mr. McGeese is required to keep a masturbation journal as part of his treatment program. As the probation officer gains access to the file, the probation officer starts questioning him about things in this journal, starts asking him questions about how often he masturbates, and this actually can start to impinge on the effectiveness of treatment. The treatment provider has not found anything in the journal that would say that he's violating any of his conditions of supervision, that he's violating any of the law, but the probation officer is asking him about it. In the current treatment program, my client is permitted to view legal adult pornography. While it's recognized as a trigger in the program, they say that it's fine that he can do this, yet the probation officer starts asking him about the types of pornography he's viewing, why he's viewing it, and what he's doing with it. These become intrusive into the effectiveness of the program and will actually defeat the purposes of having him in treatment if he cannot honestly talk about it in treatment, if he starts becoming protective as to all these questions. But it's just... You all have the same question. The issue is how much is the court supposed to foresee about the problems that could arise as opposed to if something terrible happens during supervised release, dealing with it then. I'm not sure how much you're saying the court should foresee. Anyway, that was my question. Mine, too. I mean, it seems, just to elaborate on it, it seems very difficult for the district court judge to specify all the things that the probation officer can do and can't do. And it seems like you're asking the district court judge to write a code in advance. And my gloss on this is the court says, in your view or on your wish list, thou shalt participate in treatment. Yes. It says what it is. Why is it inappropriate for the probation officer supervising your client on release to ask about what's going on? It's one thing for the treatment provider to inform the probation officer that the client is participating in treatment, that the client may not be participating in treatment, or even under New York law, as is required, that our client would be posing a danger to someone in the community or to the community at large. Those would be appropriate things to report. To give full access to the file, to give the probation officer the opportunity to sit in on treatment sessions, and we've seen that in our district as well, in another case altogether that we've had one of our clients violated on, where the probation officer was sitting in on treatment and did not like things that he heard there, even though the district court ultimately said there was no violation. So this is what starts becoming problematic. What is supervised? What are the details that should be supervised versus what is becoming overly intrusive? And these are why we started raising these questions in this case. And this is our concern as to what should this look like? What order should be entered by the district court who, because you've told us, and I'm certainly agreeing because you've told us, you're not challenging that your client, it's appropriate to, and we'll give you a little more time, so don't worry about that. Thank you, Your Honor. We're not challenging that. But you are saying we're not challenging that it's appropriate for our client or inappropriate for our client to be in supervised release. That's not the ---- sorry, in treatment. Yes. Why do you ---- what does the district court say? What does the sentencing court say that gives guidance to the probation officer who has a job to do in supervising the release? We have requested in Mr. McGeese's case, actually, that the original condition be reimposed. The original condition imposed that's set forth in the judgment, in some ways, is a little clearer and, you know, it doesn't go into the whole question of including ---- it talks about the defendant is to enroll, attend and participate in mental health treatment specifically designed for the treatment of sexual offenders as approved by the probation officer. The defendant is to comply with the mandates of the treatment program and is not to leave such treatment until discharge is agreed to by the probation officer and the treating agency. So in this way, the probation officer is supervising and ensuring that he's in the treatment program, but it doesn't open up the door to all of these other concerns that we have. I'm not sure what ---- why it doesn't. If you say the current one does, why doesn't that one? Because it seems to be that once the district decided to rewrite this condition and include language from Peterson that we don't believe this Court ever, the panel and Peterson ever intended to include, we think that opened the door to all of these other issues starting to come into play. When the panel listed that including scheduling and supervision, I don't think they were saying that this was the condition that you should impose, but ultimately that's what the district decided to do when they rewrote this condition itself. I have a question about the other part of your challenge, about the voice analyzer. Yes. Thank you, Your Honor. It sounds to me it was supposed to be an or, and you didn't have to do both. So from that point of view, would it have to be sent back to get corrected, or can we just assume, can we fix the or? That's one concern that we have, but we also have the concern about the voice stress analyzer altogether. No, I'm asking you about the first part. We'll get to the reliability next. I want to know what you say about that. Yes. That could easily be fixed. Okay. Yes, Your Honor. Now, what should the Court have done with regards to this voice analyzer thing? Either not impose it at all, or at least hold a Dahlberg hearing so that we can actually consider whether or not this is a, any way, a reliable diagnostic tool. Studies have shown that, really, using a voice stress analyzer is no better than flipping a coin. So did you put that before the district court, before the sentencing court? We requested a Dahlberg hearing on this to address this, yes, Your Honor. Okay. And the Court denied our request for it. You didn't submit, you didn't proffer them to the Court? I do not recall whether or not we cited some of these studies at that time, Your Honor, because I was not the attorney on the hearing. Okay. But we did request a Dahlberg hearing. We did raise the issue as to the reliability and whether or not they should be included. Okay. Given the studies that exist, and we cited them in our brief here, it shows that it's no better than flipping a coin, that when they've actually been able to determine whether or not someone is lying based upon drug use and using the voice stress analyzer to determine that, they were only able to determine that, find 8 percent of the people tested were lying about their drug use. And, in fact, many people who did not come up with drug use, using the voice stress analyzer, they determined that there were lies being taken place about their not doing it, even though, in fact, they were. So I think this becomes significant as to whether or not this is a valid diagnostic tool that should be used here. Thank you, Mr. Osceola. Thank you. You've reserved two minutes for rebuttal, and we'll hear from Ms. Lee. Good morning. May it please the Court. My name is Tiffany Lee, and I represent the United States. As Mr. Osceola has framed this case, it really falls on these two conditions of supervised release. With respect to the condition dealing with sex offender treatment, the language here really not attracts Peterson, and it was affirmed later by this Court in United States v. Young. What the argument confuses here, what defendant's argument confuses here are the rules and laws governing imposition of a sentence versus those dealing with execution of a sentence. And this Court in United States v. MATA has already recognized that the United States Probation Office has extensive supervision powers when it comes to the execution of a sentence. Is there anything you are aware of, Ms. Lee, that would preclude the probation officer from, assuming he, she is not participating in the treatment sessions or observing them as an eyewitness, from asking the defendant about what's going on in the treatment program? I don't think there is necessarily anything necessarily prohibiting the probation officer from asking the defendant himself, under his or her supervision, about what's going on in treatment. Would that be precluded under the, in your view at least, and I'm sure Mr. Ossovich will chime in on rebuttal, but would that be precluded under the conditions that the defendant is asking for here? That is, go back to the original, I'll call them the original. The original. I think the problem with the original, which was recognized by this Court in Wadden, is that it isn't, that is an impermissible delegation to the, to the, because the way that was worded is that the defendant is to enroll as approved by probation. So the decision about enrollment, whether to participate or not, that decision-making function fell within probation, as interpreted by a panel of this Court in Wadden. So that was an impermissible delegation of judicial authority. Here, what we're saying is you have to go to treatment. The Court is telling you, it is the Court's order, you must participate in treatment. So the impact on your liberty rights is set. That's where it's set. He doesn't have, the offender doesn't have the choice to, to say I'm not going to participate in treatment, I'm not having a good day or whatever. By the wording of the current supervised release condition, the defender, the defendant must participate in treatment. Now, in terms of how, which, which provider you're going to, the details of that, the details of that treatment will be supervised by probation. So probation is not the one making the decision whether or not a defendant is going to participate in treatment. I think his argument is that the language we used in Peterson, which you're, you're stating absolutely accurately, we're going to make it clear that the district court itself has to say treatment is mandatory, but you can leave up to probation all this, the details. By using that language, we have encouraged, unintendedly encouraged probation to engage in a whole bunch of inappropriate interventions into the treatment itself, and that's impairing treatment, and that we need to go back to, we need to come up with some other language in order to avoid that. Is he wrong about that? Or is there some other mechanism other than us revising the language again? I think, I think he is wrong about that because of the fact that, you know, probation is relied upon to be the eyes and ears of the court. So there is, you know, in that supervised release condition pertaining to mandated sex offense treatment is that the offender is following the rules and regulations of whatever treatment provider program that they are participating in. So if we, again, it would be very difficult for any court to come up with an exhaustive list of what the probation officer can or cannot do. Here, basically, it provides the mechanism that what the probation officer is to do is just to supervise the details and make sure that there is a treatment provider in effect, and to know the schedule of participation with respect to the offender in that program. Turning to the defendant's argument here, the appellant's argument here, though, as putting words into his mouth, as I understand it is, but when the probation officer can become so involved in what, in asking about the treatment and looking at the various components of what goes on in the treatment, that effectively obliterates the treatment or makes it ineffective. I guess it's difficult to articulate, you know, the impact of that, those factors, because they are not before in this case. You know, so the question in evaluating the standard of review in evaluating this condition of release is did the district court abuse its discretion? And here, there were, you know, there were no facts in terms of that were argued at sentencing that, no, don't do this, because I know that this probation officer has sat in, has done this, has really interfered with X, Y, and Z. And, you know ---- Sotomayor's a mechanism, is there not? Let's fast forward and assume that there is too much interference by the probation officer such that the treatment is impaired. Correct. In which case ---- That can be brought back to the court. Correct. So to the extent, let's say, the probation officer violates an offender based on treatment allegations or, you know, not following the rules and procedures of treatment. At that juncture, certainly, you know, the defendant can say, wait a minute, you know, you went far beyond the pale. You're listening to things that are beyond the scope. And then we also have testimony of the treatment provider that was saying this guy was doing the best that he can, but for, you know, in the situation that was posited by Mr. Avziavich. The defendant would not necessarily want to litigate that in the context of a violation proceeding. They ---- I understand that, but the fact remains is, like, it's difficult to posit all the specific details in which the district court must kind of oversee in terms of how supervision is to be executed. And that's why, you know, that's why in the framework of this case and the question that's before you, the question is, does this condition pose a non-permissible delegation of judicial authority? The government's answer is no, it does not. And this Court's answer in both Peterson and Young is it does not. And then the second is, wasn't it abuse of discretion to impose this condition on this Mr. McGeese? And the answer is no, it was non-abuse of discretion. With respect to computer voice stress analyzer, it was not fully litigated at sentencing. All the counsel basically stated was, I have an issue with the reliability of computer voice stress analyzer, and therefore, you know, I think that should be deleted along with the deletion that she did get from the original proposed supervised release condition or other means or methods of testing. And again, the question is, wasn't it abuse of discretion? And the government submits no. This is an individual who had a history of violations. And prior to this one, there was a – I think it might be a reasonable condition if it has any indicia of reliability. But you didn't put on anything and he didn't put on anything. He asked for the – to be addressed, and then it kind of ended there. I think it ended there only because of the fact that the probation officer at sentencing had noted that it had already been used in the Northern District of New York for a few years and actually in United States v. Parisi, this Court did not squarely address the reliability of computer voice stress analyzer. It was both, but the condition was worded as both lie detector tests and computer voice stress analyzer. Yes. I think there was – the condition was probably framed as an or, but both were discussed in Parisi just as in the way that this Court affirmed the modification to that individual's supervised release conditions and said that those were okay. They were reasonably related to the offense. So ultimately, again, looking at abuse of discretion, there's no evidence that the District Court abused its discretion in mandating both polygraph and computer voice stress analyzer, and the government submits that the Court should affirm the sentence. Thank you, Ms. O'Brien. Thank you. You have reserved a few minutes for rebuttal, Mr. Ossoff. Thank you, Your Honor. Let me start in reverse and address Parisi. I disagree with my colleague's interpretation of Parisi. In Parisi, the Court has not addressed whether the voice stress analyzer is a valid tool. The issue in Parisi dealt with whether or not the District Court could modify a condition at the time, and the Court had put in a new condition requiring the defendant to have – participate in a polygraph or computerized voice stress analyzer. No issue was raised whether or not the voice stress analyzer was a good tool, a valid tool, a reliable tool, just whether or not the Court could modify the condition. So this is a completely different question that the Court had to address in Parisi. I think you're understanding my argument regarding the sex offender treatment and the probation officer's role. It's really a question of how intrusive the probation officer can become into the treatment. The Supreme Court in Jaffe v. Redmond has recognized that it's important that there be confidences between a treatment provider and a patient. And I think what we're seeing here is problems that arise when you have a third party starting to get involved within the treatment itself, looking at the file, sitting in on treatment sessions. We're not saying that there shouldn't be any communication between the treatment provider and the probation officer. Of course, there has to be some, but it doesn't mean that the probation officer has to interfere with every aspect of the treatment, has full access to a – an offender's file, and to be questioning an offender on permissible activities. Thus, what principle do we articulate that supports the imposition of that condition on the probation officer? I think you need to recognize that there are some privacy interests, which are liberty interests that an offender has in their sex offender treatment and their mental health treatment. And with that, we would ask you to remand the matter for resentencing. Thank you, Your Honor.